## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |  |
|---|---|---|
| HAROLD FIGUEROA AND JOSE FIGUEROA, | ) ) ) | |
| | ) | Civil No.   2014-78 |
| Plaintiffs, | ) | |
| v. | ) ) | |
| BONNEVILLE CONTRACTING & | ) | |
| TECHNOLOGY GROUP, INC. A/K/A | ) | |
| BONNEVILLE CONSTRUCTION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM OPINION AND ORDER

Before the Court is the plaintiffs' Motion to Compel defendant Bonneville Contracting and Technology Group, Inc. ("Bonneville")[1] to produce certain video surveillance footage of plaintiff Harold Figueroa.   [DE 178].[2]   Bonneville opposes the motion [DE 191], and plaintiffs filed a reply.   [DE 202].   For the reasons that follow, this Court will grant the motion to compel.

### I.   BACKGROUND

Plaintiff Harold Figueroa[3] was allegedly injured in a work-related fall in September 2013. He alleges he sustained catastrophic brain and spinal injuries in the fall, and claims he needs skilled care for his daily needs, and will not likely be able to return to work at any time.   Pls.' Mot. [DE 178] at 1-2.   Plaintiffs filed suit in this matter on September 26, 2014, naming several entity

---

[1]        The motion is directed to the Bonneville Contracting defendant, although there are two separate Bonneville entities named as defendants in the lawsuit.   The Opposition to the instant motion states that the "Bonneville defendants possess video surveillance."   Defs.' Opp'n [DE 191] at 1.   The Court will refer to the Bonneville entities collectively in this opinion.

[2]        Plaintiffs also filed a "Brief in Support" [DE 180] in addition to the 10-page motion to compel, which advances the same arguments, and covers substantially the same ground, as the motion.

[3]        Plaintiff Jose Figueroa also was allegedly injured as a result of the same incident.   Compl. [DE 1] at ¶¶ 19-20.

*Figueroa v. Bonneville Contracting & Technology Group, Inc.*
Civil No. 2014-78
Memorandum Opinion and Order
Page 2

defendants involved in the project on which plaintiffs were working at the time of the incident. Compl. [DE 1].

On December 23, 2014 and January 9, 2015, plaintiffs served written discovery on defendants, including Bonneville, which sought, among other things, identification and production of any surveillance footage of plaintiffs.[4]   On March 9, 2015, Bonneville responded to the discovery requests, denying the existence of any video surveillance footage.[5]

On June 15, 2015, defendants deposed Harold Figueroa in Philadelphia, Pennsylvania.[6] After the deposition was completed, Bonneville's counsel, Emily Shoup, Esq., "witnessed Harold Figueroa acting in a manner substantially inconsistent with the testimony that he had just completed and the demeanor he had exhibited during the deposition." [7]   Attorney Shoup thereafter recommended to her clients that they conduct surveillance on plaintiff.[8]

At a mediation on May 16, 2016, the Bonneville defendants disclosed to plaintiffs that they had video surveillance footage of Harold Figueroa.   Defs.' Opp'n [DE 191] at 4.   On May 31, 2016, Bonneville supplemented the response to the previous request for production, noting the existence of video footage taken in 2016, but expressing a willingness to produce it only after having another opportunity to depose Harold Figueroa.[9]   The instant motion to compel followed.

---

[4]      *See, e.g.,* Plaintiffs' Requests for Production of Documents [DE 180-2] at 13; Plaintiffs' Interrogatories [DE 180-1] at interrog. no. 20.

[5]      *See* defendant's responses to discovery.   [DEs 180-3, 180-4].

[6]      Decl. of E. Shoup [DE 191-1] ("Shoup Decl.") at ¶ 2.

[7]      *Id.* at ¶ 3.

[8]      *Id.* at ¶ 4.

[9]      *See* Defendant's Supplemental Response [DE 180-5].

*Figueroa v. Bonneville Contracting & Technology Group, Inc.*
Civil No. 2014-78
Memorandum Opinion and Order
Page 3

## II.   LEGAL STANDARDS

The scope of discovery is governed by Federal Rule of Civil Procedure 26(b)(1).[10]   While Rule 26(a)(1)(A)(ii) does not require a party to voluntarily produce material that would be used "solely for impeachment," Rule 26(b)(1) contains no such limitation, and provides that discovery may be had of any non-privileged material "relevant to any party's claim or defense."[11]   Thus, where a proper request is made for discovery of information or materials demonstrably relevant to a claim or defense, in the absence of a well-founded objection, such information or material must be produced.   In addition, parties have a duty to supplement responses to discovery where appropriate.   Fed. R. Civ. P. 26(e).

Where a party deems a matter sought in discovery to be protected from disclosure by a privilege, or by a claim that the matter is work product, the party must expressly make that claim,[12] and the matter may not be subject to discovery unless the party seeking it can show (1) that the matter is otherwise discoverable, and (2) that the party has a "substantial need for the materials" and (3) "cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3).   Courts considering whether material is protected as work product have recognized two types of work product:   ordinary materials prepared in anticipation of litigation, which can be discovered on a showing of need; and materials that contain the mental impressions, strategy or opinions of the attorney.   The latter is generally accorded much stricter protection from

---

[10]      On December 1, 2015, certain amendments to Rule 26 went into effect, but for purposes of the issue presently before the Court, the amendments do not substantively change the analysis that this Court must perform.

[11]      Fed. R. Civ. P. 26(b)(1).

[12]      Fed. R. Civ. P. 26(b)(5).

*Figueroa v. Bonneville Contracting & Technology Group, Inc.*
Civil No. 2014-78
Memorandum Opinion and Order
Page 4

discovery.   *See, e.g., Frazier v. Southeastern Pa. Transp. Auth*, 161 F.R.D. 309, 318 (E.D. Pa.

1995) (citing *Sporck v. Peil,* 759 F.2d 312*,* 316 (3d Cir.), *cert. denied,* 474 U.S. 903 (1985)).

With respect to video surveillance evidence generated in personal injury cases, the Court's

review[13] of the authorities indicates courts are consistent in recognizing it as discoverable, even

when faced with a work product claim.   For example, in the early case of *Snead v. Amer. Export-*

*Isbrandtsen Lines, Inc.,* 59 F.R.D. 148 (E.D. Pa. 1973), a three-judge panel of district court judges

recognized that "films which would tend to show a plaintiff's physical condition . . . are highly

relevant – perhaps they will establish the most important facts in the case."   *Id*. at 150.   The court

also acknowledged, however, that surveillance motion pictures "are obtained for use at trial," and

are therefore arguably work product under Rule 26(b)(3).   *Id.*   The *Snead* Court noted the tension

between a plaintiff's need for such evidence – which would only be available from the person who

took the video – and a defendant's need to withhold the material for use in impeachment.   *Id.* at

150-51. *See also Corrigan v. Methodist Hosp.*, 158 F.R.D. 54, 59 (E.D. Pa. 1994 ("any surveillance

materials are discoverable, within the context of the attorney work product doctrine").

Courts are divided, however, as to when such materials must be produced.   In *Machi v.*

*Metro. Life Inc. Co.*, 2008 U.S. Dist. LEXIS 45365 *2 (W.D. Pa. Jun. 10, 2008), the court noted

that there are "no binding precedents," but observed that the "weight of decisions which have

addressed the issue favor discoverability of surveillance information, albeit often with limitations

on the timing …."   The *Machi* Court, relying on *Snead*, determined that the surveillance material

---

[13]      Unfortunately, the parties offered little in the way of case law to assist the Court in this effort.   Plaintiffs insist that a case from the Virgin Islands Superior Court is "dispositive" of these procedural issues before this federal court, while Bonneville discusses the approach taken in "other cases" without citing any of them.   While the Court was not able to locate any binding Third Circuit authority, there certainly are helpful district court opinions both from within and outside of our circuit that the parties perhaps should have discussed.

*Figueroa v. Bonneville Contracting & Technology Group, Inc.*
Civil No. 2014-78
Memorandum Opinion and Order
Page 5

in that case had to be disclosed, but only after the plaintiff was deposed.   2008 U.S. Dist. LEXIS

45365 at *3.

In contrast, the court in *Gardner v. Norfolk S. Corp.,* 299 F.R.D. 434 (D.N.J. 2014) ordered

the prompt production of surveillance material, discussing the available authorities and rejecting a

plan of "staggered production" as promoting sandbagging, and undermining the discovery process.

299 F.R.D. at 435-37.   This is especially true, according to the *Gardner* Court, where the

"surveillance evidence directly relates to Plaintiffs' physical conditions [and] constitutes evidence

relevant to the subject matter of this action."   *Id.* at 437-38 (noting that Rule 26(b) does not include

an exception for materials to be used for impeachment, and that plaintiffs had expressly requested

this material in discovery).[14]   *See also McDevitt v. Verizon Servs. Corp.*, 2016 U.S. Dist. LEXIS

34777 *8-9 (E.D. Pa. Feb. 22, 2016) (observing that fairness weighs against withholding the

materials; defendant should have sought a protective order and avoided "gamesmanship").[15]

---

[14]    The *Gardner* Court relied heavily on *Gutshall v. New Prime, Inc.*, 196 F.R.D. 43, 45-46 (W.D. Va. 2000), in which the court canvassed the relevant case law and concluded the surveillance material was discoverable, notwithstanding the defendant's intent to use it for impeachment at trial.   "'While surprise has a healthy prophylactic effect against possible perjury, on balance, cases are more likely to be decided fairly on their merits if the parties are aware of all the evidence.'"   196 F.R.D. at 45 (quoting *Martin v. Long Island R.R. Co.,* 63 F.R.D. 53, 54 (S.D.N.Y. 1974)); *see also Bradley v. Liberty Mut. Group, Inc.* 2013 U.S. Dist. LEXIS 103245, *8 (M.D. La. Jul. 24, 2013) ("The federal rules promote broad discovery so that all relevant evidence is disclosed as early as possible, allowing each side to knowledgeably evaluate the strength of its evidence and chances of success . . .Allowing parties to withhold their best evidence – substantive and impeachment – until after deposition would nullify the discovery process").

[15]    In a case involving video evidence of the subject incident, rather than post-suit surveillance, one court observed "the hope or expectation that relevant evidence may impeach a witness does not establish good cause to delay the production of the evidence in discovery.   Impeachment evidence is available in virtually every case." *Inferrera v Wal-Mart Stores, Inc.*, 2011 U.S. Dist. LEXIS 146007, *2-3 (D.N.J. Dec. 20, 2011).   The *Inferrera* Court was concerned that the argument for withholding relevant evidence could extend to "incriminating documents e-mails, photographs, audiotapes, etc.," and, that "[t]aken to an extreme, the delayed production of relevant evidence could become the rule rather than an exception."   *Id.* at *3.   The court found this approach was not consistent with either the letter or the spirit of the discovery rules.   *Id.*

*Figueroa v. Bonneville Contracting & Technology Group, Inc.*
Civil No. 2014-78
Memorandum Opinion and Order
Page 6

### III.  DISCUSSION

Turning to the instant case, the Court first notes that Bonneville concedes both that the video surveillance material is discoverable and that plaintiffs requested such material in discovery. Defs.' Opp'n [DE 191] at 2, 3-4, 6-7.   Notwithstanding these concessions, Bonneville argues that the video is work product, and is intended to be used for the purpose of impeaching Harold Figueroa.   Thus, according to Bonneville, the "search for the truth" would be advanced if Bonneville were allowed to withhold the footage until after Bonneville can cross-examine him. *Id.* at 4-5.   The essential fallacy in this argument, however, is that Bonneville has already effectively "cross-examined" Harold Figueroa, as Bonneville deposed him prior to obtaining the footage.   And, as Bonneville's counsel avers, after his deposition, she saw Harold Figueroa "acting in a manner that was substantially inconsistent with the testimony he had just completed." Shoup Decl. [191-1] at ¶ 3.   Therefore, Bonneville has already locked in testimony regarding plaintiff's description of his condition, which they may try to use at trial to impeach him, should he offer changed testimony at that time.   Further, Bonneville may be able to use the video as well to show substantively that plaintiff's condition is not what he claims it to be.

Moreover, even if the footage is considered work product and conditionally protected from disclosure under Rule 26(b)(3), as the case law discusses, video evidence is unique, and available only from one source:   the person who created it.   *Snead*, 59 F.R.D. at 150 (a camera may capture a particular moment or circumstance and there is "substantial need" for "knowledge of the film for preparation for trial"); *Gutshall*, 196 F.R.D. at 46 ("it is impossible to procure the substantial equivalent [] without undue hardship, as videotape 'fixes information available at a particular time and a particular place under particular circumstances, and therefore cannot be duplicated'")

*Figueroa v. Bonneville Contracting & Technology Group, Inc.*
Civil No. 2014-78
Memorandum Opinion and Order
Page 7

(citations omitted and alterations supplied); *Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102 (E.D.N.C. 1993) ("plaintiff's past activities can no longer be filmed").   Therefore, notwithstanding Bonneville's characterization of it as work product, plaintiffs are entitled to production of the video footage.

Based upon its review of the parties' arguments, and the relevant authorities, this Court sides with the majority of courts that conclude that the purposes to be served by an open and broad discovery scheme, as evidenced in the Federal Rules, weigh in favor of prompt disclosure to plaintiffs of the videos in question.   This is particularly true where, as here, Bonneville has in fact had an opportunity to fully explore with Harold Figueroa under oath his testimony regarding his physical condition, albeit prior to the creation of the specific footage at issue.   The Court is confident that, in the circumstances presented, disclosure will promote the search for the truth in this matter.

## IV.   CONCLUSION

For the foregoing reasons and the premises considered, it is hereby ORDERED that the motion to compel [DE 178] is GRANTED; and it is further ORDERED that Bonneville shall produce the video footage within 10 days of the date of this Order.

**Dated:** July 8, 2016                                    S\_____
                                                          **RUTH MILLER**
                                                           United States Magistrate Judge